494

DECIDED FEBRUARY 20, 1933.

*F. Joe Turner Jr., J. Robert Morris,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,* contra.

MacINTYRE, J. Roy Johnson, the plaintiff in error, and Jack Lane were jointly indicted and tried for the offense of robbery, and were convicted.

The first question presented by the record is whether or not the presiding judge, the Hon. J. R. Hutcheson, committed reversible error in refusing to disqualify himself to pass upon the motion for a new trial, for the reason that when the jury returned its verdict of "guilty" he stated in open court: "I think it is a proper verdict . . ; I think the verdict is just." Section 5933 of the Civil Code of 1910, as amended by the act of 1918, reads in part as follows:

"1. No judge of any court shall either directly or indirectly express, in open court, his approval or disapproval of the verdict of any jury in any case tried before him, except as herein provided; nor shall said judge have a right to discharge any jury upon the ground that the verdict rendered in any case shall not meet with his approval. 2. If any judge of any court of this State shall either directly or indirectly express his approval or disapproval in open court of the verdict of the jury in any case tried before him, he shall be disqualified from presiding in such case in event a new trial should be granted. But nothing in this act shall have the effect to prohibit a judge of any court from approving or disapproving the verdict of a jury in any case tried before him in hearing a motion for a new trial that comes on before him; however, such approval or disapproval on the hearing of a motion for new trial shall be ex-

pressed in the formal order of the judge in granting or overruling such motion, and not otherwise. 3. No judge of any court of this State shall have the right to commend or compliment a jury during the term of any court for discharging their duties, such commending or complimenting under the provisions of this act shall have the effect of approving of verdicts." The first part of subsection 1 of said code section says that "no judge of any court shall either directly or indirectly express, in open court, his approval or disapproval of the verdict of any jury in any case tried before him, except as herein provided." No penalty is attached in this subsection. However, in the first part of subsection 2 the language just quoted is repeated, and it is provided that the penalty therefor is the disqualification of the judge from presiding in such case *in the event a new trial is granted.* The latter part of this subsection 2 refers only to hearings on motions for a new trial, and is inapplicable to the alleged error (in the original trial) complained of in the present case. Subsection 3 says: "No judge of any court of this State shall have the right to commend or compliment a jury during the term of any court for discharging their duties, such commending or complimenting under the provisions of this act shall have the effect of approving of verdicts." In other words, if the judge commends or compliments the jury during the term of any court for discharging their duties, what is the penalty therefor? It is the same penalty as that prescribed for his approval or disapproval of the verdict of the jury in open court, etc., which penalty is his disqualification *in case a new trial should be granted.* The subsections above quoted nowhere say a judge is disqualified in a hearing on a motion for a new trial, but say that if the judge in the original trial does certain things prohibited therein he is disqualified on a retrial of the case, in the event a new trial is granted. Therefore we hold that the judge did not commit error in refusing to disqualify himself *on the hearing of the motion for a new trial.*

Since a new trial is herein granted on another ground, Judge Hutcheson would be disqualified from presiding upon the retrial of the case. We think, however, it is the better practice to refrain from such remarks under such circumstances.

In special ground 1 error is alleged in the following charge of the court: "Confessions refer to criminal trials, and all confessions of guilt should be scanned with care and received with great caution.

A confession alone, uncorroborated, will not justify a conviction. To make a confession admissible it must not have been induced by another by the slightest hope of benefit or remotest fear of injury. So, if it should appear to you in this case there has been any confession of any crime, if there has been evidence of a confession, before you should consider that confession at all, before it should be allowed to remain in your minds for a second, it should appear that the confession was made freely and voluntarily, and the party making the confession, or alleged to have made it, was not induced by any promise or any threat or hope of any reward or fear of punishment, before you would consider it. These are questions for you to consider, and you are the sole judges, if you believe any confession was made, whether or not the confession was voluntarily made without any fear of punishment or hope of reward. Then, of course, if you find a confession was voluntarily made, in the manner defined to you, then, of course, you take the confession, if you find it was made, weigh it, and give it such weight as you think it deserves." The gist of the error alleged is that the trial judge failed to charge the principle of law stated in section 1035 of the Penal Code (1910), in the following language: "The confession of one joint offender or conspirator, made after the enterprise is ended, is admissible only against himself."

The movant in this case made no confession or incriminatory statement. The theory of the State's case is that shortly after nine o'clock on the night of March 4, 1932, the two defendants, one with a pistol and the other with something in his hand, attacked and severely beat Sherman Martin, night-watchman for the Southern Cotton Oil Company, and took from Martin by force a certain pistol belonging to his employer. Neither defendant introduced any evidence, and each of them denied all knowledge of the alleged robbery. Indeed, this was really the only defense of movant. City detective H. C. Newton testified as follows: "The first time I saw these two defendants here was the night they were arrested, the 4th of March, about 10:15, or possibly a few minutes later. I had a conversation with Jack Lane later, but not that night. That was in the police station a few days later. I had a conversation with him about the robbery of this old darkey, Sherman Martin. Jack told me that he was prepared and ready to plead guilty to his part, which was attempted robbery. He told me he tried to take the

pistol away from the negro and tried to make Mr. Mobley open the safe. . . He says: 'I am ready to stand for my part and plead to my part, but I am not saying anything about any one else at all.'" The foregoing statement was made several days after the robbery, and movant was not present when it was made. Under section 1035, supra, and countless decisions of both of the appellate courts of this State, it was not evidence against movant. The charge given instructed the jury to consider the statement and "give it such weight as you think it deserves." Jurors are intelligent and upright men, but they could hardly be expected to know the principle of law under consideration. The rule invoked in this ground should, in our judgment, have been given to the jury, and we hold that the court's failure to instruct the jury in regard to it was harmful error to movant.

If we are correct in the conclusion reached, it would not be proper to decide the general grounds of the motion for a new trial; and, of course, it is not necessary to pass upon the remaining special grounds, which relate to newly discovered evidence.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*